Denisse O. Gastélum, SBN 282771
**GASTÉLUM LAW, APC**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

Attorneys for Plaintiffs,
Estate Of William Kason, et al.

Christian Contreras, SBN 330269
Email: CC@Contreras-Law.com
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101

Attorneys for Plaintiffs, Ofelia Kason

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

ESTATE OF WILLIAM KASON; I.R.K., a minor by and through Guardian Ad Litem ELIZABETH ALICIA ROBINSON; OFELIA KASON, individually and as successor in interest to WILLIAM KASON,

                Plaintiffs,

      v.

INDIO POLICE DEPARTMENT, a public entity; CITY OF INDIO, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a public entity; COUNTY OF RIVERSIDE, a public entity; SHERIFF CHAD BIANCO, individual; TIMOTHY VROOMAN, individually; FRANCISCO PEREIRA; individually; JUAN GONZALEZ RUIZ, individually; DOES 1-20,

                Defendants.

**CASE NO.: 5:25-cv-1633**

**COMPLAINT FOR DAMAGES**

1. Denial of Medical Care, Fourth Amendment Violation (42 U.S.C. § 1983)
2. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983)
3. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983)
4. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C § 1983)
5. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983)
6. Municipal Liability - Failure to Train (*Monell*, 42 U.S.C. § 1983)
7. Supervisory Liability (42 U.S.C. § 1983)
8. Negligence – Wrongful Death & Survival
9. Negligence – Medical Malpractice
10. Violation of California Government Code §845.6
11. Violation of California Civil Code §52.1 (Tom Bane Act)

**DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.      This civil rights action seeks to vindicate the in-custody death of pretrial detainee WILLIAM KASON who died in-custody on June 23, 2024 at the Riverside County Sheriff's Department, John J. Benoit Detention Center ("JBDC").

2.      WILLIAM KASON was arrested on June 20, 2024 over a minor non-violent misdemeanor. WILLIAM KASON should have been cited and released, not taken to jail. However, INDIO POLICE DEPARTMENT officers arrested WILLIAM KASON and took him into RIVERSIDE COUNTY SHERIFF'S DEPARTMENT custody.

3.      WILLIAM KASON was booked into COUNTY custody on June 20, 2024. While in COUNTY custody, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, had the duty and obligation to ensure that WILLIAM KASON was protected from harm and his needed medical needs were attended to. In fact, WILLIAM KASON had a Fourteenth Amendment right to be free from harm and be provided needed medical care.

4.      Within hours, WILLIAM KASON was found unconscious and unresponsive in his cell, having laid there for over two hours. WILLIAM KASON was then sent to a hospital but never regained consciousness, ultimately dying on June 23, 2024.

5.      WILLIAM KASON leaves behind a family including his son, Plaintiff I.R.K., and his mother, Plaintiff OFELIA KASON. WILLIAM KASON is dearly missed by his friends and family.

6.      As further explained below, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, and

each of them, violated WILLIAM KASON's constitutional rights leading to WILLIAM KASON's foreseeable death after being booked into COUNTY custody.

7.    The tragic death of WILLIAM KASON comes at the midst of a crisis within Riverside County Jails. Indeed, in 2022, eighteen (18) individuals died while incarcerated at the Riverside County Jails, the highest number for the County in the last fifteen (15) years. In response to these alarming numbers, the California Department of Justice launched an investigation into the Riverside County Sheriff's Department's unconstitutional patterns and practices resulting in the record-breaking in-custody deaths. The raw data and the per capita data make clear that the Riverside County Jails are a death sentence for any pretrial detainee.

8.    Indeed, in 2023, the Riverside County Jails continued to experience an alarming number of in-custody deaths, specifically sixteen (16) in-custody deaths, ranging from inmate-on-inmate violence and sexual assault to severely injured arrestees dying at intake to pretrial detainees not receiving the necessary medical care to treat chronic health conditions.

9.    In 2024, the Riverside County Jails continued to take the lives of pretrial detainees who are subjected to cruel and inhumane treatment by custody and medical staff.[1]

10.    Long before WILLIAM KASON's death, each of the individually named defendants from the County of Riverside and the Riverside County Sheriff's Department knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the Riverside County correctional facilities, including Robert Presley Detention Center, Cois M. Byrd Detention Center, Larry D. Smith Correctional Facility, John J. Benoit Detention Center and Blythe Jail.

---

[1] Indeed, on April 22, 2024, RCSD Corrections Captain Alyssa Vernal sent an email to the corrections sergeants. The email was sent in response to Mr. Ramos and Mr. Price's 2024 in-custody deaths, and it served to admonish the sergeants for not complying with proper jail policies and procedures. The email read, in relevant part: "Sergeants, last week we had a suicide and last night an OD. In assisting in security checks and reviewing DVR, it has become obvious we are not keeping house or following the rules we should be."

11.     The COUNTY has repeatedly been put on notice of the great dangers which existed within the Riverside County correctional facilities through the long history of in-custody deaths; the inmate-on-inmate violence which permeated the jails; the record-breaking amount of fentanyl overdoses throughout all Riverside County correctional facilities; the federal class action *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) (hereinafter the "*Gray* Class Action") targeting the Riverside County Sheriff's Department custody and medical staff's deliberate indifference to the safety and protection of inmates; the warnings from neutrally-selected experts regarding the Riverside County Sheriff's Department's custody and medical staff's failures amounting to constitutional violations; a court ordered Consent Decree directing the Riverside County Sheriff's Department to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill the Riverside County Sheriff's Department's obligations under the Eighth and Fourteenth Amendments; and through a voluntarily entered Settlement Agreement which required that the Riverside County Sheriff's Department remedy all of the deficiencies addressed in the *Gray* class action.

12.     Despite this long history of complete disregard to inmate safety and protection, the COUNTY defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the Riverside County correctional facilities. Thus, by the time WILLIAM KASON was taken into custody and placed at the John J. Benoit Detention Center, the jail was infested with endemic, ongoing and unabated risks of injury or death to inmates – risks which indeed resulted in WILLIAM KASON's death on June 23, 2024.

## JURISDICTION AND VENUE

13.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

**COMPLAINT FOR DAMAGES**

14.    This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

15.    Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## PENDANT CLAIMS

16.    Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

17.    With respect to the supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## PARTIES

### A. Plaintiffs

18.    Decedent WILLIAM KASON (hereinafter also "Decedent") was a 36-year-old father and son. At the time of his death, he was a pretrial detainee who resided in the County of Riverside, California. The claims made by Plaintiff ESTATE OF WILLIAM KASON, are brought by successors in interest, I.R.K, a minor by and through Guardian Ad Litem ELIZABETH ALICIA ROBINSON, OFELIA KASON, and ELIZABETH ALICIA ROBINSON.

19.    Plaintiff I.R.K., by and through Guardian Ad Litem ELIZABETH ALICIA ROBINSON, is and was, at all times relevant hereto, the natural son of decedent WILLIAM KASON, and at all times relevant hereto was a resident of the County of Riverside, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 *et seq*., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of decedent WILLIAM KASON on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

1  Plaintiff also brings these claims as a Private Attorney General, to vindicate not only
2  his rights, but others' civil rights of great importance.

3      20.  Plaintiff OFELIA KASON, is and was, at all times relevant hereto, the
4  natural mother of decedent WILLIAM KASON, and at all times relevant hereto was a
5  resident of the County of Riverside, California. Plaintiff brings these claims pursuant
6  to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 *et seq*., which
7  provide for survival and wrongful death actions. Plaintiff also brings her claims
8  individually and on behalf of decedent WILLIAM KASON on the basis of 42 U.S.C.
9  §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and
10  California law. Plaintiff also brings these claims as a Private Attorney General, to
11  vindicate not only her rights, but others' civil rights of great importance.

12  **B. Defendants**

13      21.  Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY")
14  owns, operates, manages, directs and controls Defendant RIVERSIDE COUNTY
15  SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public entity,
16  which employs other Doe Defendants in this action. At all times relevant to the facts
17  alleged herein, Defendant COUNTY was responsible for assuring that the actions,
18  omissions, policies, procedures, practices and customs of its employees, including
19  RCSD employees and the Correctional Health Services (hereinafter also "CHS")
20  employees, complied with the laws and the Constitutions of the United States and of
21  the State of California. Defendant COUNTY, through RCSD and CHS, is and was
22  responsible for ensuring the protection and safety of all persons incarcerated at the
23  RCSD correctional facilities, including the John J. Benoit Detention Center (hereinafter
24  "RBDC"), Cois M. Byrd Detention Center (hereinafter "CBDC"), Larry D. Smith
25  Correctional Facility (hereinafter "CBDC"), John J. Benoit Detention Center
26  (hereinafter "JBDC"), and the Blythe Jail (hereinafter collectively "COUNTY Jails").

27      22.  Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY
28  SHERIFF'S DEPARTMENT will hereinafter be referred to as the COUNTY
DEFENDANTS.

6

23.    Defendant CHAD BIANCO ("SHERIFF BIANCO"), at all times mentioned herein, is and, since November 6, 2018, has been the Sheriff-Coroner of Defendant COUNTY OF RIVERSIDE, the highest position in the COUNTY Jails. As Sheriff, Defendant BIANCO is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant SHERIFF BIANCO is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant SHERIFF BIANCO also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant SHERIFF BIANCO is being sued in his individual and official capacities.

24.    Defendant TIMOTHY VROOMAN ("VROOMAN"), at all times mentioned herein, was employed by Defendant COUNTY as a Corrections Deputy of the COUNTY Jails for the COUNTY, and he was acting within the course and scope of that employment. During the relevant time period, Defendant VROOMAN was responsible for the safety and wellbeing of JBDC detainees, subordinate to the Sheriff and/or Undersheriff. Defendant VROOMAN is being sued in his individual capacity.

25.    Defendant FRANCISCO PEREIRA ("PEREIRA"), at all times mentioned herein, was employed by Defendant COUNTY as a Corrections Deputy of the COUNTY Jails for the COUNTY, and he was acting within the course and scope of that employment. During the relevant time period, Defendant PEREIRA was responsible for the safety and wellbeing of JBDC detainees, subordinate to the Sheriff and/or Undersheriff. Defendant PEREIRA is being sued in his individual capacity.

///

26.    Defendant JUAN GONZALEZ RUIZ (hereinafter also "GONZALEZ RUIZ") at all times mentioned herein, was employed by Defendant COUNTY as a Corrections Deputy of the COUNTY Jails for the COUNTY, and he was acting within the course and scope of that employment. During the relevant time period, Defendant

GONZALEZ RUIZ was responsible for the safety and wellbeing of JBDC detainees, subordinate to the Sheriff and/or Undersheriff. Defendant GONZALEZ RUIZ is being sued in his individual capacity.

27.    Defendant CITY OF INDIO(hereinafter "CITY") is a California municipality, located within the CITY of RIVERSIDE, with the capacity to sue and be sued.

28.    Defendants CITY OF INDIO and INDIO POLICE DEPARTMENT will hereinafter be referred to as the CITY DEFENDANTS.

29.    Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1-20 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

30.    The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1-20 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1- include individual law enforcement personnel employed by the RCSD, and the COUNTY, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. On information and belief, DOES 1-20 were and still are residents of the County of Riverside, California. DOES 1-20 are sued in both their individual and official capacities.

31.    At all relevant times, DOES 11-15 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 11-15 were acting under color of law within the course and scope of their duties as employees for the COUNTY. They had supervisorial authority over DOES 1-5, and

the COUNTY employees at the COUNTY Jails. DOES 11-15 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

32.    At all relevant times, DOES 16-20 were managerial, supervisorial, training, and/or policymaking employees of Defendant CITY. At the time of the incident, DOES 16-20 were acting under color of law within the course and scope of their duties as employees for the IPD and/or the CITY. They had supervisorial authority over DOES 6-10, and the employees of the IPD. DOES 16-20 were acting with the complete authority and ratification of their principal, Defendant CITY.

33.    Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

34.    Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent WILLIAM KASON's constitutional rights and other harm.

9

35.    Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

36.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

37.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

38.    On June 20, 2024, decedent WILLIAM KASON was arrested and booked into the Riverside County Sheriff's Department, Robert Presley Detention located at 4000 Orange St, Riverside, CA 92501. On June 23, 2024, within a few hours of being booked at JBDC, WILLIAM KASON died in the intake area of JBDC.

39.    On June 20, 2024, WILLIAM KASON was arrested by Defendants DOES 1-10 and INDIO POLICE DEPARTMENT for a low-level nonviolent offense.

40.    WILLIAM KASON should have been only cited and released, never taken to jail.

41.    Upon information and belief, WILLIAM KASON suffered injuries as a result of his arrest that led to serious and life-threatening physical injuries. Indeed, in an independent autopsy, WILLIAM KASON was noted to have severe bruising and blunt force trauma over his back, torso, and head.

///

42.    Despite WILLIAM KASON suffering severe injuries, Defendants DOES 1-10 did not provide any medical care to WILLIAM KASON. Defendants DOES 1-10 also did not take WILLIAM KASON to a hospital.

43.    Defendants DOES 1-10 proceeded to take WILLIAM KASON to JBDC where he succumbed to those injuries after being found unresponsive while in-custody at the JBDC intake area several hours later.

44.    WILLIAM KASON was booked into the JBDC, where he was allegedly "medically screened." A proper medical screening would have easily shown the

1   medical care WILLIAM KASON needed and the risks he faced if he did not receive

2   proper medical care.  Instead, Defendants TIMOTHY VROOMAN, FRANCISCO

3   PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, simply booked

4   WILLIAM KASON into JBDC.

5       45.    As such, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA,

6   JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, had ample notice that

7   WILLIAM KASON was suffering from serious injuries, was in need of immediate

8   medical assistance, and yet were deliberately indifferent to his serious medical needs.

9       46.    Despite WILLIAM KASON needing medical care, Defendants

10  TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and

11  DOES 1-10, inclusive, abandoned WILLIAM KASON after intake.

12      47.    Despite being required by official policy and safety procedures to

13  conducted safety checks in the time leading up to WILLIAM KASON's death,

14  Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ

15  RUIZ, and DOES 1-10, inclusive, clearly failed to conduct safety checks or adequate

16  safety checks. By the time WILLIAM KASON was found unresponsive, unconscious,

17  and dying, he is estimated to have been in such a state for over two hours.

18      48.    Only then was WILLIAM KASON transported to a hospital, where he

19  never regained consciousness.

20  ///

21      49.    Therefore, due to the great delays on behalf of Defendants TIMOTHY

22  VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10,

23  inclusive, in securing adequate emergency medical attention for WILLIAM KASON,

24  and the failures on behalf of the Defendants in performing the required safety and

25  welfare checks, WILLIAM KASON died on June 23, 2024.

26      50.    WILLIAM KASON was only 36 years old when he was taken off life

27  support and subsequently died on June 23, 2024.

28      51.    WILLIAM KASON was a pretrial detainee, and therefore, innocent until

proven guilty.

11

1    52.    This complaint may be pled in the alternative pursuant to Federal Rule of

2    Civil Procedure 8(d).

3    ## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND

4    ## SUPERVISORIAL CAUSES OF ACTION

5    53.    Based upon the principles established in *Monell v. Dep't of Soc. Servs. of*

6    *City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained

7    by Plaintiffs as set forth herein. In *Monell v. Department of Social Servs.*, 436 U.S.

8    658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities

9    were "persons" under § 1983 and thus could be held liable for causing a constitutional

10    deprivation. *Id.* at 690, 98 S.Ct. 2018. The Court explained that while a municipality

11    may not be held liable under § 1983 for the torts of its employees on a theory of

12    respondeat superior, liability may attach where the municipality *itself* causes the

13    constitutional violation through the execution of an official policy, practice or custom.

14    *Id.* at 690–691, 98 S.Ct. 2018.[2]

15    54.    To establish municipal liability under *Monell v. Dep't of Soc. Servs. of City*

16    *of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff]

17    possessed a constitutional right of which she was deprived; (2) that the municipality

18    had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate

19    indifference    to    the    plaintiff's    constitutional    right;    and,    (4)    that    the

20    policy/custom/practice is the moving force behind the constitutional violation.

21    *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The

22    policy/custom/practice "need only cause the constitutional violation; it need not be

23    unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994).

24    Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice

25    or policy behind the violation of rights; (2) a deliberately indifferent omission, such as

26    a failure to train or failure to have a needed policy; and (3) a final policy-maker's

27

28    [2] *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department.").

**COMPLAINT FOR DAMAGES**

1    involvement in or ratification of the conduct underlying the violation of rights.

2    *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

3    **A. The COUNTY Jails Experienced Their Deadliest Year in 2022.**

4    55.    In 2022, Defendant RIVERSIDE COUNTY SHERIFF'S

5    DEPARTMENT'S COUNTY Jails have resulted in eighteen (18) in-custody deaths.

6    Prior to 2022, Riverside County had not logged more than twelve (12) such deaths in

7    any year since 2005. [3]

8    56.    Two years prior to WILLIAM KASON's death, there were eighteen (18)

9    in-custody deaths within the COUNTY Jails during the 2022 calendar year:

10        a.  Alicia Upton (Date of Loss: April 28, 2022; Manner of Death: "Suicide")

11        b.  Abel Valencia Cruz (Date of Loss: May 1, 2022: Manner of Death:
12            "Natural")

13        c.  Justin Kail (Date of Loss: May 17, 2022; Manner of Death:
14            "Accident-Overdose")

15        d.  Brawn Lamar Hampton (Date of Loss: May 26, 2022; Manner of Death:
16            "Natural")

17        e.  Michael Vasquez (Date of Loss: May 26, 2022; Manner of Death:
18            "Accident-Overdose")[4]

19        f.  Yareth Villagomez (Date of Loss: June 20, 2022; Manner of Death:
20            "Accident-Overdose")

21        g.  Richard Edward Biscotti (Date of Loss: July 11, 2022; Manner of Death:
22            "Natural")

23        h.  Richard Matus Jr. (Date of Loss: August 11, 2022; Manner of Death:
24            "Accident-Overdose")

25

26    [3] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches
      Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at

27    https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-
      riverside-county

28    [4] Pretrial detainee Michael Vasquez was just 20 years old at the time of his death.  He had been in
      the facility for only (6) six days prior to being exposed to the dangers and risks permeating the
      CBDC, all of which ultimately resulted in his death.

i.  Abel Anthony Chacon (Date of Loss: August 25, 2022; Manner of Death: "Accident-Overdose")

j.  Octavio Zazueta (Date of Loss: August 26, 2022; Manner of Death: "Accident-Overdose")

k.  Gary Roy Haneline (Date of Loss: August 27, 2022; Manner of Death: "Natural")

l.  Mario Solis (Date of Loss: September 3, 2022; Manner of Death: "Accident")[5]

m.  Kaushal Niroula (Date of Loss: September 6, 2022; Manner of Death: "Strangulation")[6]

n.  Robert Louis Robinson (Date of Loss: September 7, 2022; Manner of Death: "Suicide/Hanging")

o.  Ulyses Munoz Ayala (Date of Loss: September 29, 2022; Manner of Death: "Homicide Willful")[7]

p.  Cynthia Heredia (Date of Loss: October 13, 2022; Manner of Death: "Pending")

q.  Katie Patton (Date of Loss: November 20, 2022 Manner of Death: "Pending")

---

[5] Notably, while the COUNTY DEFENDANTS have reported to the Department of Justice that pretrial detainee Mario Solis' death was an "accident," what is known through the Coroner's Investigative Narrative and Autopsy Report is that Mr. Solis was indeed in a safety cell (*i.e.*, cells intended for suicidal inmates) an ingested multiple foreign objects, including a pencil, toothbrush, and plastic bags with soap. Mr. Solis ultimately died due to the pencil puncturing his right jugular vein. Upon information and belief, the COUNTY DEFENDANTS have attempted to classify this death as an "accident" in an effort to absolve themselves from liability arising from a *suicidal* pretrial detainee who is housed in a safety cell, but is nevertheless able to access such hazardous objects to commit suicide. What is more is that Mr. Solis' family was not notified about his death until six (6) days had passed.

[6] Decedent Kaushal Niroula was a transgender HIV-positive female inmate, who was brutally and repeatedly beaten and strangled by her cellmate, Ronald Sanchez—a convicted sex offender. Ms. Niroula was killed just three days before trial. Upon information and belief, Ms. Niroula had been assisting state and federal authorities to help uncover the illegal wiretapping at the COUNTY Jails.

[7] Pretrial detainee Ulyses Munoz Ayala was brutally killed by a *known* violent inmate, Erik Martinez, whom he was forced to share a cell with. *See* "Corona Man Killed In Riverside County Jail Cell" (The Sun, September 30, 2022), available at https://www.sbsun.com/2022/09/30/corona-man-killed-in-riverside-county-jail-cell/

**COMPLAINT FOR DAMAGES**

r. Ronald Cook (Date of Loss: December 12, 2022 Manner of Death: "Pending")

57.     The deaths include six (6) overdoses, two (2) homicides resulting from inmate-on-inmate violence, three (3) suicides, four (4) natural cause deaths, and three (3) pending.

58.     The Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in several completed and attempted suicides.  On November 23, 2022, pretrial detainee Charles Wall attempted suicide by jumping off the top tier of his housing module at JBDC.  From November 19, 2022 through November 23, 2022, Mr. Wall made repeated requests for psychiatric care and medication.  Mr. Wall suffered from schizophrenia and suicidal ideations, which was known to the COUNTY custody and medical staff given his prior attempts to commit suicide at JBDC in 2015, as well as his extensive medical and mental health history. These requests were ignored by the custody and medical staff. On November 23, 2022, Mr. Wall pled with a custody staffer, begging for an opportunity to speak with a psychiatrist.  The custody staffer demanded to know why Mr. Wall needed to speak with a psychiatrist. When Mr. Wall hesitated, the custody staffer shouted, "Do what you gotta do! Stop pushing my fucking buttons or you're gonna give me a reason to come in!" Shortly thereafter, Mr. Wall attempted suicide by jumping off the second story of his housing module.

**B. The COUNTY Jails Continued to Experience a Deadly Year in 2023.**

59.     In 2023, Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's COUNTY Jails continued to experience a deadly year:

a. On January 12, 2023, pretrial detainee Mark Spratt died as a result of injuries he suffered during a brutal attack by his cellmate at CBDC. According to inmates who perceived the attack, Mr. Spratt was physically and sexually assaulted by his cellmate for an appreciable amount of time. At the conclusion of the assault, the cellmate proceeded to throw Mr.

Spratt's body from the second tier of the housing module. Mr. Spratt was only 24 years old at the time of his death.

b. On February 5, 2023, pretrial detainee Christian Viramontes was found unresponsive in his cell at JBDC. Upon information and belief, Mr. Viramontes' death was caused by hazards permeating the JBDC. Mr. Viramontes was only 26 years old at the time of his death.

c. On February 6, 2023, pretrial detainee Jesus Rodriguez died in-custody due to injuries suffered during an arrest. An investigation into the manner and means of death remains pending.

d. On February 21, 2023, pretrial detainee Christian Drye died in-custody at a COUNTY hospital due to injuries suffered during an arrest. An investigation into the manner and means of death remains pending.

e. On March 11, 2023, pretrial detainee Asher Saunders was found unresponsive in his cell at CBDC. Upon information and belief, the death was caused by hazards permeating the CBDC. An investigation into the manner and means of death remains pending.

f. On May 26, 2023, pretrial detainee Ruben Guzman died following an undisclosed incident at JBDC. Upon information and belief, Mr. Guzman received numerous threats to his life by inmates and custody staff at the COUNTY Jails. Upon information and belief, Mr. Guzman was found unresponsive in a holding cell on May 22, 2023. He died four days later on May 26, 2023. While the RCSD's investigation into the manner and means of death remains pending, an independent autopsy evidenced blunt force trauma to Mr. Guzman's head and upper body.

g. On July 5, 2023, Astrid Johnson, a 62-year-old man female inmate housed in the JBDC, died in-custody. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Ms. Johnson with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "natural."

16

h.  On August 14, 2023, Steven Crawford, 71-year-old pretrial detainee, was found unresponsive in his cell at JBDC. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Crawford with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "natural."

i.  On August 27, 2023, Tavea Starks-Walker, a 31-year-old pretrial detainee, was found unresponsive in his cell at CBDC. Upon information and belief, Mr. Starks-Walker's death was caused by hazards permeating the CBDC. An investigation into the manner and means of death remains pending.

j.  On June 23, 2024, Tina Atchley, a 65-year-old pretrial detainee, was found unresponsive in her cell. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Ms. Atchley with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "natural."

k.  On September 18, 2023, DAMON BEITZ, a 46-year-old pretrial detainee, was found unresponsive in his cell at CBDC. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Flores with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "natural."

l.  On November 4, 2023, Charles Giurbino, a 58-year-old pretrial detainee, was found unresponsive in the intake area of CBDC. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Giurbino with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "pending."

m. On December 13, 2023, Luke Hanchette, a 44-year-old pretrial detainee, was found unresponsive in his cell at RCSD. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Hanchette with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "pending."

17

n. On December 15, 2023, Shaundale Booker, a 21-year-old pretrial detainee, was found unresponsive in his cell at RCSD. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Booker with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "pending."

o. On December 17, 2023, Heather Hendy, a 29-year-old pretrial detainee, was found unresponsive in her cell at RCSD. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Ms. Hendy with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "pending."

**C. In 2024, the COUNTY Jails Continued to Experience In-Custody Deaths Resulting from Egregious Failures on Behalf of the RCSD Custody Staff and the CHS Medical Staff.**

60. In 2024, the COUNTY Jails continued to take the lives of pretrial detainees who are subjected to cruel and inhumane treatment by RCSD custody staff and CHS medical staff:

a. On January 9, 2024, Richard Contreras, a 44-year-old pretrial detainee, succumbed to brain injuries in the hospital following a gruesome attack by his cellmate. Upon information and belief, Mr. Contreras had been physically assaulted by the same cellmate days prior and taken to the hospital. Upon returning to the RCSD from the hospital, Mr. Contreras was housed in the *same* cell with the *same* violent cellmate resulting in his death. Despite the RCSD custody personnel's deliberate failures in protecting Mr. Contreras from the violent inmate, the RCSD reported the manner of death to be "pending."

b. On April 16, 2024, Reynold Ramos, a 55-year-old pretrial detainee, was found unresponsive in his cell at the JBDC. Upon information and belief, an inmate observed Mr. Ramos fashioning a noose in an attempt to hang himself. The inmate proceeded to utilize the cell intercom to get the

18

**COMPLAINT FOR DAMAGES**

custody staff's attention, however, the custody staff ignored the intercom calls. Mr. Ramos was found 45 minutes later hanging from the noose. Nonetheless, the RCSD reported the manner of death to be "pending."

c. On April 19, 2024,[8] Mack Price, a 53-year-old pretrial detainee, was found unresponsive in his cell at CBDC. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Price with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "pending."

d. On August 18, 2024, an unidentified 41-year-old male pretrial detainee was found unresponsive in a sobering cell at the CBDC. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide the detainee with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "pending."

e. On September 7, 2024, Steve Gonzalez, a 36-year-old male detainee, was killed after a brutal stabbing by another inmate who was given a screwdriver despite having a history of violence and threats. The RCSD reported the manner of death to be "homicide".

f. On October 4, 2024, Johnnie Curtis Stevens, a 40-year-old male detainee, was found unresponsive in a housing cell at the CBDC. The RCSD reported the manner of death to be "pending."

g. On December 25, 2024, an unidentified 24-year-old male pretrial detainee was found dead at the LSCF. The RCSD reported the manner of death to be "pending."

61. Furthermore, the Defendants' deliberate indifference towards protecting pretrial detainees from violence has resulted in numerous deaths and assaults at the COUNTY Jails.

---

[8] Indeed, on April 22, 2024, JBDC Corrections Captain Alyssa Vernal sent an email to the JBDC sergeants. The email was sent in response to Mr. Ramos and Mr. Price's in-custody deaths, and it served to admonish the JBDC sergeants for not complying with proper jail policies and procedures. The email read, in relevant part: "Sergeants, last week we had a suicide and last night an OD. In assisting in security checks and reviewing DVR, it has become obvious we are not keeping house or following the rules we should be."

19

**D. RCSD Refuses to Comply with California Department Justice Mandates Regarding In-Custody Death Reporting Abating Transparency and Accountability.**

62.    Despite the record-braking in-custody deaths at the COUNTY Jails, and the suspicious circumstances surrounding the in-custody deaths, the COUNTY DEFENDANTS have refused to adhere to state mandates and regulations which were explicitly created to ensure accountability and transparency, including California Government Code section 12525[9] and Title 15 Minimum Standards for Local Detention Facilities, section 1046 Death in Custody.[10]

63.    The COUNTY DEFENDANTS have refused to comply with these mandates which were enacted to provide transparency and accountability when inmates and prisoners die in-custody within California correctional facilities.

64.    The COUNTY DEFENDANTS reported some of the in-custody deaths six weeks after they occurred, despite the 10-day mandate.[11]

65.    The COUNTY DEFENDANTS provided inaccurate information to the Department of Justice, classifying the pretrial detainees, who had died in their custody as "sentenced" post-convicted prisoners.[12] Upon information and belief, this orchestrated misclassification of the pretrial status of the decedents was done purposely by the COUNTY DEFENDANTS so as to impose the Eighth Amendment higher

[9] *See* Cal. Gov. Code § 12525 ("In any case in which a person dies while in the custody of any law enforcement agency or while in custody in a local or state correctional facility in this state, the law enforcement agency or the agency in charge of the correctional facility shall report in writing to the Attorney General/DOJ, within 10 days after the death, all facts in the possession of the law enforcement agency or agency in charge of the correctional facility concerning the death.")

[10]  *See* Title 15 Minimum Standards for Local Detention Facilities, Section 1046 Death ("The facility administrator, in cooperation with the health administrator, shall develop written policy and procedures to ensure that there is an initial review of every in-custody death within 30 days. The review team shall include the facility administrator and/or the facility manager, the health administrator, the responsible physician and other health care and supervision staff who are relevant to the incident.")

[11] *See* "Riverside Sheriff Failed to Report Inmate Deaths to State On time; Names of Dead Made Public" (Desert Sun, September 16, 2022), available at https://www.desertsun.com/story/news/crime_courts/2022/09/16/riverside-county-sheriffs-failed-report-inmate-deaths-state-time/8017820001/

[12] *Id.*

**COMPLAINT FOR DAMAGES**

degree of culpability standard, rather than the less stringent Fourteenth Amendment degree of culpability.[13]

**E. California Department of Justice Launched Patterns and Practices Investigation into Recording Breaking In-Custody Deaths at the COUNTY Jails.**

66.    On February 23, 2023, the California Department of Justice (DOJ) announced its decision to launch a formal investigation into Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's unconstitutional patterns and practices resulting in record-breaking in-custody deaths at the COUNTY Jails and the use of excessive force by sheriff's deputies, disproportionately affecting Latino and African American communities.[14] The raw data and the per capita data make clear that the COUNTY Jails are a death sentence for any pretrial detainee, some of whom have died just days or hours after being booked, like in the case of WILLIAM KASON.[15] For reference, San Diego County had 19 in-custody deaths in 2022, despite an average *daily* jail population of *500 more people than* Riverside County.

---

[13] Pretrial detainees are perceived as innocent under the eyes of the law. Because they are mere detainees who are simply awaiting their day in court, the Constitution mandates that additional protective measures be put in place to ensure that the detainees are not harmed while in the government's custody. More specifically, the 14th Amendment requires that correctional facilities not be deliberately indifferent towards the detainees' safety and protection. *See Gordon v. County of Orange,* 888 F.3d 1118 (9th Cir. 2018). Once an inmate has been convicted of a crime, they are deemed to be a post-conviction prisoner. While the Constitution too protects post-conviction prisoners, the 8th Amendment merely requires that the prisoners not be subjected to cruel and unusual punishment while in the government's custody. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). The end result is that the legal standard under which a civil rights lawsuit is premised upon is much higher and more difficult to prove for a post-conviction prisoner (*i.e.*, subjective standard) rather than a pretrial detainee (*i.e.,* objective standard). Upon information and belief, the COUNTY DEFENDANTS purposely classified the pretrial detainees as inmates who had already been "sentenced" in an effort to make it merely impossible for the families to establish liability because of the heightened standard of culpability imposed on civil rights cases filed by post-conviction prisoners.

[14] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[15] *Id.*

**COMPLAINT FOR DAMAGES**

67.    During the press conference, the California Attorney General Rob Bonta expressed his grave concerns with regard to Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT: "All Californians deserve fairness and respect from the institutions that serve them […]. When some communities don't see or feel they are being treated equitably by law enforcement, it contributes to distrust and hurts public safety. Unfortunately, it is clear that — amid concerning levels of in-custody deaths and allegations of misconduct — too many families and communities in Riverside County are hurting and looking for answers. As part of my office's ongoing efforts to support constitutional policing, the California Department of Justice is opening a civil rights investigation into the Riverside County Sheriff's Office. Whether you have a loved one in jail or are worried about crime in your neighborhood, we all benefit when there is action to ensure the integrity of policing in our state."

68.    In response to the California Department of Justice's civil rights investigation in the COUNTY Jails, Sheriff Chad Bianco issued the following offensive statement illustrating indifference towards the lives lost in his jails: "This investigation is based on nothing but false, and misleading statements, and straight-out lies from activists, including their attorneys. This will prove to be a complete waste of time and resources."[16]

**F. RCSD's History of Indifference Towards Inmates Incarcerated at the COUNTY Jails.**

69.    For well over a decade now, the COUNTY's own Grand Jury, as well as several independent auditors, have come to the same conclusion: dangerous deficits in health care services at the jails threaten the lives and health of the thousands of men and women they hold.

70.    The "2010-11 Grand Jury Report: Riverside County Detention Health

---

[16] *See* Riverside County Sheriff's Department YouTube video titled: "Sheriff Bianco's Response to Frivolous Civil Rights Investigation by DOL" (February 23, 2023), available at https://www.youtube.com/watch?v=6ttMVVLyfa4

**COMPLAINT FOR DAMAGES**

Care Administration" found systemic failures in treatment, medication management, record-keeping, and administration of forced medications, among other areas. [17]

71.    The Grand Jury released an updated report in June 2012, noting that mental health staffing had in fact decreased since its prior year's report. [18]

72.    On March 8, 2023, the federal class action lawsuit *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) was filed against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. The class action alleged that the COUNTY failed to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. The class action also alleged discrimination against certain inmates with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

73.    The *Gray* operative complaint (Dkt. 150) alleged the following unconstitutional patterns and practices permeating the COUNTY Jails:

   a.  RCSD, by policy and practice, maintains and runs a health care system that lacks basic elements necessary to provide constitutional care;

   b.  RCSD, by policy and practice, systematically fails to identify and diagnose serious conditions, to provide timely care, to administer appropriate medications, to employ adequate staff to meet inmates' basic needs, to maintain records that allow informed treatment decisions, to establish legally required confidentiality, and to identify and correct its own failings;

   c.  RCSD, by policy and practice, maintains and runs substandard medication management and administration;

---

[17] *See* 2010-2011 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2010-2011/11mentalhealth_detentionserv.pdf

[18] *See* 2011-2012 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2011-2012/12mentalhealthdetention.pdf

**COMPLAINT FOR DAMAGES**

d.  RCSD, by policy and practice, is severely understaffed at the COUNTY Jails;

e.  RCSD, by policy and practice, provides substandard medical care to inmates;

f.  RCSD, by policy and practice, provides substandard mental health care to inmates;

74.    On September 2, 2014, the Court granted Plaintiffs' Motion for Class Certification.

75.    On February 20, 2015, the parties agreed to hire neutral experts to determine whether the health care provided at the COUNTY Jails posed a significant risk of serious harm to inmates confined in the COUNTY Jails and, if so, to make recommendations for improvements that will provide the minimum care guaranteed by the United States Constitution.

76.    On July 15, 2015, the neutrally appointed experts issued reports, determining that the health care failed to meet the constitutional minimum. As such, the parties agreed to negotiate a Remedial Plan to address the identified deficiencies in the expert reports.

77.    Due to the COUNTY DEFENDANTS' ongoing failures to comply with the Consent Decree, Plaintiffs in the *Gray* Class Action have had to seek emergency relief from the Court to ensure that the Consent Decree is enforced.

**PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS**

**(Against individual Defendants SHERIFF CHAD BIANCO, TIMOTHY VROOMAN, FRANCISCO PEREIRA, JUAN GONZALEZ RUIZ, and DOES 1-20)**

78.    Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

79.    Long before WILLIAM KASON's death, Defendants SHERIFF CHAD BIANCO, TIMOTHY VROOMAN, FRANCISCO PEREIRA, JUAN GONZALEZ

1   RUIZ knew that there existed a great indifference to the safety and protection of the

2   inmates who were in the government's custody within the COUNTY Jails.

3       80.    Defendants SHERIFF CHAD BIANCO, TIMOTHY VROOMAN,

4   FRANCISCO PEREIRA, JUAN GONZALEZ RUIZ  were repeatedly put on notice of

5   the great dangers which existed within the COUNTY Jails through the long history of

6   in-custody deaths; the record-breaking amount of fentanyl overdoses throughout all

7   COUNTY Jails; inmate-on-inmate violence; the federal class action *Quinton Gray, et*

8   *al. v. County of Riverside*, case number 13-0444 VAP (OPx) (C.D. Cal.) targeting

9   Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's custody, medical

10  and mental health staff's deliberate indifference towards the safety and protection of

11  inmates; the warnings from the neutrally-selected experts regarding failures amounting

12  to constitutional violations; a Consent Decree directing Defendant RIVERSIDE

13  COUNTY SHERIFF's DEPARTMENT to implement a Remedial Plan to meet the

14  minimum level of health care necessary to fulfill its obligations under the Eighth and

15  Fourteenth Amendments; and through a Settlement Agreement which the COUNTY

16  voluntarily entered into requiring that Defendant RIVERSIDE COUNTY SHERIFF'S

17  DEPARTMENT   remedy all of the deficiencies in healthcare and disability

18  accommodations alleged in the Gray class action complaint.

19      81.    Despite this long history of complete disregard to inmate safety and

20  protection, Defendants SHERIFF CHAD BIANCO, TIMOTHY VROOMAN,

21  FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, have

22  deliberately failed to take even modest actions to prevent in-custody deaths and great

23  bodily injuries to inmates at the COUNTY Jails which have for a very long time been

24  infested with endemic, ongoing and unabated risks of injury or death to inmates.

25      82.    The Defendant officers, and each of them, acted with malice and

26  oppression and with a conscious disregard for Plaintiffs' rights, making the individual

27  defendants, including DOES 1-10, liable for punitive damages.

28              **FIRST CAUSE OF ACTION**

               **Denial of Medical Care,**

**Violation of the Fourth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of WILLIAM KASON**

**As Against DOE INDIO POLICE DEPARTMENT OFFICERS**

83.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

84.    Claims for the denial of medical assistance after an arrest are analyzed under the Fourth Amendment. *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1098 (9th Cir. 2006). Officers must provide objectively reasonable post-arrest care to an apprehended suspect. *Id.* "Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Tatum v. City and CITY of San Francisco* (9th Cir. 2006) 441 F.3d 1090, 1099 (citing *Graham v. Connor,* 409 U.S. 386 (1989). 441 F.3d at 1098).

85.    On June 20, 2024, after it was clear that WILLIAM KASON needed medical care, Defendants DOES 1-10, inclusive, denied or failed to summon medical care.

86.    Upon information and belief, on June 20, 2024, Defendants DOES 1-10, were aware of the injuries WILLIAM KASON had sustained during arrest, including the obvious bruising. Furthermore, per Defendants' own admission, WILLIAM KASON fainted while under their care. Clearly, WILLIAM KASON needed medical care.

87.    Despite WILLIAM KASON's medical needs Defendants WILLIAM KASON denied and failed to summon medical care in violation of the Fourth Amendment. Defendants DOES 1-10, should have taken WILLIAM KASON to a hospital to address his medical issues.

88.    Instead, Defendants DOES 1-10, inclusive, decided to book WILLIAM KASON into JBDC so that WILLIAM KASON could spend time in jail and not cited and released.

89.    Therefore, Defendants DOES 1-10, inclusive,  inclusive, caused the death of WILLIAM KASON because they denied and failed to summon medical care when it was obvious that WILLIAM KASON needed medical care. By virtue of their misconduct, Defendants DOES 1-10, inclusive, are liable for WILLIAM KASON's tragic death because these Defendants were integral participants in the failure to summon medical care, or because they failed to intervene to prevent these violations.

///
///

90.    Accordingly, Defendants DOES 1-10, inclusive, are liable for all damages recoverable under 42 U.S.C. Section 1983.

91.    The ESTATE OF WILLIAM KASON by this action, further claims all of Plaintiff's attorneys' fees and costs incurred and to be incurred in Plaintiff presenting, maintaining and prosecuting this action under 42 U.S.C. Section 1988.

92.    The conduct of Defendants DOES 1-10, inclusive, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of WILLIAM KASON and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1-10.

## SECOND CAUSE OF ACTION

**Failure to Protect from Harm,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of WILLIAM KASON**

**As Against Defendants TIMOTHY VROOMAN, FRANCISCO PEREIRA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive**

93.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

94.     Pretrial detainees such as WILLIAM KASON have a Fourteenth Amendment due process right to be free from harm. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

95.     Upon information and belief, on June 20, 2024, Defendants TIMOTHY VROOMAN, FRANCISCO PEREIRA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive and each of them, made the intentional decision to place WILLIAM KASON, in JBDC custody, or keep him in JBDC custody, which is in a condition of confinement which significantly exposed him to the risk of harm which ultimately caused WILLIAM KASON 's death.

96.     Indeed, when WILLIAM KASON arrived to JBDC, WILLIAM KASON was in medical distress given that his arrest caused him injuries such as blunt force trauma to the torso. Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, should have sent WILLIAM KASON to a hospital or treated him for his injuries. Instead, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, booked, processed, and continued to house WILLIAM KASON at JBDC. By housing WILLIAM KASON in his injured condition, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, intentionally placed WILLIAM KASON in serious risk of harm and failed to take reasonable available measures to abate or reduce that risk, even though any other reasonable person in such circumstances would have appreciated the high degree of risk involved—making the consequences of the Defendant's conduct obvious. Clearly, by not taking such measures, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, caused WILLIAM KASON 's death.

97.     Furthermore, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, failed to conduct proper and timely Title 15 welfare and safety checks, thereby authorizing, permitting,

1    and/or encouraging a correctional environment that posed a substantial risk to the

2    health and safety of inmates who suffered from life threatening conditions such as

3    WILLIAM KASON. Because of these Defendants' deliberate conduct, WILLIAM

4    KASON died on June 23, 2024.

5        98.    Due to the great delays in securing adequate emergency medical attention

6    for WILLIAM KASON, and the wrongful and deliberate conduct on behalf of

7    Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ

8    RUIZ, and DOES 1-10, inclusive, of failing to adequately monitor and supervise

9    inmates through the use of surveillance cameras to ensure that a medical emergency

10   does not go unnoticed and is attended to in a timely manner; and failing to perform the

11   required safety and welfare checks, WILIAM KASON did not respond to medical

12   intervention and died on June 23, 2024.

13       99.    Defendants COUNTY, RCSD, DOES 6 through 10 were on notice that

14   their deficient policies, procedures, and practices alleged herein created substantial risk

15   of serious harm to an inmate in decedent WILLIAM KASON 's position.

16       100.   Each Defendant could have taken action to prevent unnecessary harm to

17   decedent WILLIAM KASON but refused or failed to do so.

18       101.   By policy, procedure, and practice, Defendants COUNTY, RCSD, DOES

19   1 through 20 deliberately disregarded the risks posed to persons incarcerated at the

20   JBDC, as alleged above. Defendants failed to take any reasonable steps to mitigate the

21   obvious and well-known risks of harm that was attendant to housing decedent

22   WILLIAM KASON at JBDC.

23       102.   Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN

24   GONZALEZ RUIZ, and DOES 1-10, inclusive, failed to conduct the required safety

25   check of decedent WILLIAM KASON's housing unit, evidencing deliberate

26   indifference to the risk of harm to decedent WILLIAM KASON.

27       103.   As a direct and proximate result of Defendants' conduct, the civil right of

28   WILLIAM KASON, as protected by the Fourteenth Amendment of the United States

Constitution were violated.   Further, decedent WILLIAM KASON experienced

**COMPLAINT FOR DAMAGES**

physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

104.  Defendants subjected decedent WILLIAM KASON to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

105.  As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

106.  The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY or RCSD.

107.  Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## THIRD CAUSE OF ACTION

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of WILLIAM KASON**

**As Against Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive,**

108.  Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

109.  Pretrial detainees such as WILLIAM KASON have a Fourteenth Amendment due process right to adequate medical care. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

110.  By the actions and omissions described above, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent WILLIAM

KASON, through Plaintiff herein, of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution: Decedent's right to be free from deliberate indifference to WILLIAM KASON 's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments.

111.   By the actions and omissions described above, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, as alleged herein, including but not limited to their failure to provide decedent WILLIAM KASON  with appropriate emergency medical care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical care and life saving care to persons in their custody, constituted deliberate indifference to WILLIAM KASON's serious medical needs, health, and safety.

112.   In fact, when WILLIAM KASON arrived to JBDC, it was clear that he was in medical distress and needed medical care. Instead of addressing WILLIAM KASON's medical needs, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, booked, processed, and continued to house WILLIAM KASON. Clearly, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, were deliberately indifferent to DAMON BEITZ's medical needs and violated his right to adequate medical care.

113.   As a direct and proximate result of Defendants' conduct, the civil rights of WILLIAM KASON, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent WILLIAM KASON  experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

114.  Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and

1  reckless disregard for whether the rights and safety of Decedent and others would be

2  violated by their acts and/or omissions.

3      115.   As a direct and proximate result of Defendants' acts and/or omissions as

4  set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

5      116.   The conduct of Defendants entitles Plaintiff to punitive damages and

6  penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not

7  seek punitive damages against Defendants COUNTY.

8      117.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42

9  U.S.C. § 1988, and other applicable United States and California codes and laws.

10  **FOURTH CAUSE OF ACTION**

11  **Deprivation of the Right to Familial Relationship with Decedent,**

12  **Violation of the Fourteenth Amendment to the United States Constitution**

13  **(42 U.S.C. § 1983)**

14  **By Plaintiffs I.R.K. and  OFELIA KASON, individually and as successors in**

15  **interest to WILLIAM KASON As Against Defendants TIMOTHY VROOMAN,**

16  **FRANCISCO PERIERA, and JUAN GONZALEZ RUIZ**

17      118.   Plaintiffs reallege and incorporate herein by reference each of the

18  preceding paragraphs of this complaint, and any subsequent paragraphs.

19      119.   Parents and children possess a constitutionally protected liberty interest in

20  companionship and society with each other. *Smith v. City of Fontana*, 818 F.2d 1411,

21  1418 (9th Cir. 1987), overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199

22  F.3d 1037 (9th Cir. 1999) (en banc). This liberty interest is rooted in the Fourteenth

23  Amendment, which states in relevant part that "[n]o State shall . . . deprive any person

24  of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

25      120.   The aforementioned acts and/or omissions of Defendants TIMOTHY

26  VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10,

27  inclusive, in being deliberately indifferent to decedent WILLIAM KASON's

28  protection, safety, and serious medical needs, violating decedent WILLIAM KASON's

constitutional rights, and their failure to train, supervise, and/or take other appropriate

measures to prevent the acts and/or omissions that caused the untimely and wrongful death of WILLIAM KASON deprived Plaintiffs I.R.K. and OFELIA KASON of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiffs I.R.K. OFELIA KASON of their rights to a familial relationship with WILLIAM KASON without due process of law by their deliberate indifference in causing substantial harm to WILLIAM KASON through Defendants' acts and omissions.

121.    All of the acts of Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, and the persons involved were done under color of state law.

122.    The acts and omissions of Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, were conduct which shocks the conscience done with a purpose to harm or in deliberate indifference to WILLIAM KASON's life, protection, and constitutional rights.

123.    The acts and/or omissions of Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, including their failure to summon medical care, violated Plaintiffs' liberty interests in the familial relationship and violated Plaintiffs' substantive due process rights as defined by the Fourteenth Amendment of the Constitution.

124.    The acts and omissions of Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, deprived Plaintiffs I.R.K. and OFELIA KASON of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiffs of their rights to a familial relationship with WILLIAM KASON without due process of law by their deliberate indifference in causing substantial harm to WILLIAM KASON through Defendants' acts and omissions.

**COMPLAINT FOR DAMAGES**

125.    In engaging in conduct that shocks the conscience, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, , acted with a purpose to harm, unrelated to any legitimate law enforcement objective with deliberate indifference to the rights, safety, and well-being of WILLIAM KASON when they failed to summon medical care.

///

126.    As a direct and proximate result of Defendants' conduct, the civil rights of WILLIAM KASON, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent WILLIAM KASON experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

127.    Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

128.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

129.    The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants CITY and COUNTY.

130.    Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## FIFTH CAUSE OF ACTION

**Municipal Policies, Customs, Practices Causing Constitutional Violations**

**(*Monell* - 42 U.S.C. § 1983)**

**By Plaintiff Estate of WILLIAM KASON As Against Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, CITY OF INDIO & INDIO POLICE DEPARTMENT**

131.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

132.    In *Monell v. Department of Social Servs*., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation. *Id.* at 690, 98 S.Ct. 2018. The Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of respondeat superior, liability may attach where the municipality *itself* causes the constitutional violation through the execution of an official policy, practice or custom. *Id.* at 690–691, 98 S.Ct. 2018.[19]

133.    As set forth in the forgoing claims for relief, Defendants DOES 1-10 committed clear and well-established violations of constitutional rights against WILLIAM KASON within the course and scope of their employment as IPD officers and RCSD deputies, under color of law.

134.    On and for some time prior to June 20, 2024 (and continuing to the present date), Defendants IPD, CITY, COUNTY, and RCSD, and DOES 1-20, acting with deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs and WILLIAM KASON, and of persons in their class situation and comparable position in particular, knowingly maintained, enforced and applied officially recognized customs, policies, and practices in violation of person's constitutional rights.

135.    The unconstitutional actions and/or omissions of Defendants DOES 1-5, as well as other employees or officers employed by or acting on behalf of the Defendants CITY and IPD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants CITY and IPD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant CITY and IPD:

---

[19] *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department.")[35]

a. Permitting IPD officers to take a person to county jail instead of citing and releasing such person when they merely committed a minor offense;

b. Permitting IPD officers to not summon or provide medical care when an arrestee needs medical care;

c. Employing and retaining as officers and other personnel, including Defendants DOES 6-10, despite of knowing or reasonably discovering, that they had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written IPD policies;

d. Of inadequately supervising, training, controlling, assigning, and disciplining CITY employees and other personnel, including Defendants DOES 6-10 whom Defendants CITY knew, or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

e. By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants DOES 6-10, who are officers and/or agents of CITY and IPD;

f. By failing to discipline CITY officers' and/or agents' conduct, including but not limited to, unlawful detention and failure to summon medical care;

g. By ratifying the intentional misconduct of Defendants DOES 6-10, and other CITY officers and/ or agents, who are CITY and IPD officers and/or agents of CITY and IPD; and

h. By failing to properly investigate claims of unlawful detention and failure to summon medical care by IPD officers.

136.   In addition, the unconstitutional actions and/or omissions of Defendants DOES 6-10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or

ratified by policymaking officers for Defendant COUNTY and RCSD, including SHERIFF BIANCO, TIMOTHY VROOMAN, FRANCISCO PEREIRA and JUAN GONZALEZ RUIZ:

   a.   To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

   b.   To hire, retain and contract for obviously inadequate medical care for arrestees and jail inmates, including creating financial incentives for custodial personnel not to send inmates with emergency medical needs to a hospital;

   c.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures to properly check incoming arrestees for injuries that require immediate medical assistance;

   d.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in need of immediate medical assistance;

   e.   To cover up violations of constitutional rights by any or all of the following:

   i.   By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

   ii.   By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial personnel;

   iii.   By allowing, tolerating, and/or encouraging custodial personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of

37

**COMPLAINT FOR DAMAGES**

unconstitutional or unlawful conduct by withholding and/or concealing material information;

f.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, RCSD personnel, and custodial personnel at the jail whereby an officer or member of the RCSD does not provide adverse information against a fellow officer;

g.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (f) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

137.    The unconstitutional actions and/or omissions of Defendants DOES 6-10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and RCSD:

a.    To fail to properly and adequately hire, train, supervise, and monitor custodial personnel at the jails;

b.    To fail to use appropriate and generally accepted law enforcement procedures for handling persons in need of immediate medical assistance;

c.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in need of immediate medical assistance;

d.    To cover up violations of constitutional rights by any or all of the following:

**COMPLAINT FOR DAMAGES**

i.  By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in need of immediate medical assistance;

ii.  By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

iii.  By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.  To allow, tolerate, and/or encourage a "code of silence" among custodial personnel at the COUNTY jails whereby custodial personnel does not provide adverse information against a fellow staffer;

g.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (f) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

138.  Defendants CITY, IPD, COUNTY, RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO and DOES 11-20 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants TIMOTHY VROOMAN, FRANCISCO PEREIRA, and

1   JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, and other CITY, IPD,

2   COUNTY, RCSD personnel, with deliberate indifference to the constitutional rights of

3   decedent WILLIAM KASON, Plaintiffs and others in similar positions, as described

4   above, and therefore, those rights thereby violated.

5        139.    The unconstitutional actions and/or omissions of Defendants TIMOTHY

6   VROOMAN, FRANCISCO PEREIRA, JUAN GONZALEZ RUIZ, and DOES 1-10,

7   CITY, IPD, COUNTY, RCSD employees, as described above, were approved,

8   tolerated, and/or ratified by policymaking officers for the COUNTY and CITY,

9   including SHERIFF BIANCO, and DOES 11-20. Plaintiff is informed and believes and

10  thereon alleges that the details of this incident have been revealed to the authorized

11  policymakers within the CITY, IPD, COUNTY, RCSD, and that such policymakers

12  have direct knowledge of the fact that the death of WILLIAM KASON was the result

13  of deliberate indifference to his rights to be protected and safe while in the custody of

14  the CITY, IPD, COUNTY, RCSD, and his rights to have access to medical care when

15  suffering a medical emergency. Notwithstanding this knowledge, the authorized

16  policymakers within the CITY, IPD, COUNTY, RCSD have approved of the conduct

17  and decisions of Defendants TIMOTHY VROOMAN, FRANCISCO PEREIRA,

18  JUAN GONZALEZ RUIZ, and DOES 1-10 in this matter, and have made a deliberate

19  choice to endorse such conduct and decisions, and the basis for them, that resulted in

20  the death of WILLIAM KASON.

21       140.  By so doing, the authorized policymakers within the CITY, IPD,

22  COUNTY, RCSD have shown affirmative agreement with the individual Defendants'

23  actions and have ratified the unconstitutional acts of the individual Defendants.

24  Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants

25  COUNTY and RCSD were and are aware of a pattern of misconduct and injury caused

26  by COUNTY Jails custody and medical staff similar to the conduct of Defendants

27  described herein but failed to discipline culpable custody and medical staff and failed

28  to institute new procedures and policy within the CITY, IPD, COUNTY, RCSD.

**COMPLAINT FOR DAMAGES**

141.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY, RCSD, CITY, and IPD were a moving force and/or a proximate cause of the deprivations of decedent WILLIAM KASON's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983.

142.    Defendants subjected decedent WILLIAM KASON to their wrongful conduct, depriving decedent WILLIAM KASON of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent WILLIAM KASON, Plaintiffs and others would be violated by their acts and/or omissions.

143.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY, RCSD, CITY, and IPD as described above, decedent WILLIAM KASON suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY, RCSD, CITY, and IPD.

## SIXTH CAUSE OF ACTION

### Municipal Liability – Failure to Train

### (42 U.S.C. § 1983)

**By Plaintiff Estate of WILLIAM KASON As Against Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, CITY OF INDIO & INDIO POLICE DEPARTMENT**

144.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

145.    At all material times, Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff,

1   and discipline the other Defendants employed by their respective agencies in this
2   matter, as well as all employees and agents of the COUNTY, RCSD, CITY, and IPD.

3        146.    Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY
4   SHERIFF'S DEPARTMENT failed to properly hire, train, instruct, monitor, supervise,
5   evaluate, investigate, and discipline the respective employees of their agencies,
6   including Defendants TIMOTHY VROOMAN, FRANCISCO PEREIRA, JUAN
7   GONZALEZ RUIZ, and DOES 1-10, inclusive, and other IPD and RCSD personnel,
8   with deliberate indifference to Plaintiffs', decedent WILLIAM KASON's, and others'
9   constitutional rights, which were thereby violated as described above.

10       147.    The unconstitutional customs, policies, practices, and/or procedures of
11  Defendants and RCSD as stated herein, were directed, encouraged, allowed, and/or
12  ratified by policymaking officers for Defendants COUNTY, RCSD, CITY, and IPD
13  including Defendants TIMOTHY VROOMAN, FRANCISCO PEREIRA, JUAN
14  GONZALEZ RUIZ, and DOES 1-10, inclusive, with deliberate indifference to
15  Plaintiff's, decedent WILLIAM KASON's, and others' constitutional rights, which
16  were thereby violated as described above.

17       148.    The unconstitutional customs, policies, practices, and/or procedures of
18  Defendants COUNTY, RCSD, CITY, and IPD as stated herein, were directed,
19  encouraged, allowed, and/or ratified by policymaking officers for COUNTY, RCSD,
20  CITY, and IPD with deliberate indifference to Plaintiff's, decedent WILLIAM
21  KASON's, and others' constitutional rights, which were thereby violated as described
22  above.

23       149.    The unconstitutional actions and/or omissions of Defendants TIMOTHY
24  VROOMAN, FRANCISCO PEREIRA, JUAN GONZALEZ RUIZ, and DOES 1-10,
25  inclusive, and other COUNTY, RCSD, CITY, and IPD personnel, as described above,
26  were approved, tolerated, and/or ratified by policymaking officers for the COUNTY,
27  RCSD, CITY, and IPD.

28

**COMPLAINT FOR DAMAGES**

150.   The unconstitutional actions and/or omissions of Defendants COUNTY, RCSD, CITY, and IPD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY, RCSD, CITY, and IPD.

151.   Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants COUNTY, RCSD, CITY, and IPD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY, RCSD, CITY, and IPD officers similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY, RCSD, CITY, and IPD.

152.   Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants COUNTY, RCSD, CITY, and IPD and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent WILLIAM KASON was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and his rights to his serious medical needs, as set forth above.

153.   Notwithstanding this knowledge, on information and belief, Defendants COUNTY, RCSD, CITY, and IPD have approved and ratified of the conduct and decisions of Defendants TIMOTHY VROOMAN, FRANCISCO PEREIRA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of WILLIAM KASON. By so doing, Defendants TIMOTHY VROOMAN, FRANCISCO PEREIRA, JUAN GONZALEZ RUIZ, and DOES 1-10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants.

154.   Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants COUNTY, RCSD, CITY, and IPD and other policymaking officers for the COUNTY, RCSD, CITY, and IPD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY, RCSD, CITY, and IPD custody personnel similar to the conduct of Defendants described herein, but failed to discipline

culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY, RCSD, CITY, and IPD.

155.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY, RCSD, CITY, and IPD were a moving force and/or a proximate cause of the deprivations of decedent WILLIAM KASON's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

156.   Defendants subjected decedent WILLIAM KASON to their wrongful conduct, depriving decedent WILLIAM KASON of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent WILLIAM KASON and others would be violated by their acts and/or omissions.

157.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY, RCSD, CITY, and IPD as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### Supervisory Liability

### (42 U.S.C. § 1983)

### By Plaintiff ESTATE OF WILLIAM KASON

### As Against Defendants SHERIFF CHAD BIANCO and DOES 11 through 20

158.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

159.   At all material times, SHERIFF BIANCO, and DOES 11 through 20 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their

respective agencies in this matter, as well as all employees and agents of the COUNTY and RCSD.

160.    Defendants SHERIFF BIANCO and DOES 11 through 20 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 12 through 20, and other COUNTY and RCSD personnel, with deliberate indifference to Plaintiffs and others' constitutional rights, which were thereby violated as described above.

161.    As supervisors, Defendants SHERIFF BIANCO, and DOES 11 through 20 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at the COUNTY Jails and the rights to the serious medical and mental health needs of Plaintiff WILLIAM KASON. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Plaintiff's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Plaintiff of rights, or knew his or her subordinates were engaging in acts likely to deprive Plaintiff of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Plaintiff's rights, and in fact did cause the violation of Plaintiff's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4, 9.6). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Plaintiff's rights.

162.    The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and RCSD, including Defendants SHERIFF BIANCO, and DOES 11 through 20 , respectively, with deliberate indifference to Plaintiff's and others' constitutional rights, which were thereby violated as described above.

163.    The unconstitutional actions and/or omissions of Defendants HERIFF BIANCO, VROOMAN, PEREIRA, GONZALEZ RUIZ and DOES 1 through 10, and other COUNTY and RCSD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF BIANCO, and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the refusal of medical care for Plaintiff WILLIAM KASON was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and his rights to his serious medical needs, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF BIANCO, and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the attempted suicide by Plaintiff WILLIAM KASON.

164.    By so doing, Defendants SHERIFF BIANCO, and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, and DOES 11 through 20 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD custody, medical and mental health staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

165.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and

toleration of wrongful conduct of Defendants SHERIFF BIANCO, and DOES 11 through 20 were a moving force and/or a proximate cause of the deprivations of Plaintiff WILLIAM KASON's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

166. Defendants subjected Plaintiff WILLIAM KASON to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions.

167. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF BIANCO, and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### Negligence (Wrongful Death & Survival)

### Plaintiffs I.R.K. and OFELIA KASON

### As Against All Defendants Save IPD & RCSD

168. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

169. The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under § 820 of the Government Code, as public employees, the individual defendants are liable for injuries caused by their acts or omissions to the same extent as private persons. Under § 815.2 of the Government Code, Defendants COUNTY are liable for injuries caused by the acts or omissions of its employees, agents, and/or detectives committed within the course and scope of their employment. This claim for relief is not alleging direct liability against Defendants COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

170. At all times, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive, and DOES 1-10,

1  inclusive, owed Plaintiffs and decedent WILLIAM KASON the duty to act with due
2  care in the execution and enforcement of any right, law, or legal obligation.

3      171.    At all times, these Defendants owed Plaintiffs and decedent WILLIAM
4  KASON the duty to act with reasonable care.

5      172.    These general duties of reasonable care and due care owed to Plaintiffs
6  and decedent WILLIAM KASON by these Defendants TIMOTHY VROOMAN,
7  FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, inclusive,
8  include but are not limited to the following specific obligations:

9      a.  To summon, or transport Decedent to, necessary and appropriate
10         emergency medical care;

11     b.  To refrain from unreasonably creating danger or increasing Decedent's
12         risk of harm;

13     c.  To use generally accepted law enforcement procedures and tactics that are
14         reasonable and appropriate for Decedent's status as a person in medical
15         crisis with serious medical needs;

16     d.  To conduct state mandated safety and welfare checks of inmates in the
17         custody of the COUNTY Jails;

18     e.  To refrain from abusing their authority granted them by law; and

19     f.  To refrain from violating Plaintiffs' and Decedent's rights as guaranteed
20         by the United States and California Constitutions, as set forth above, and
21         as otherwise protected by law.

22     173.    Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN
23  GONZALEZ RUIZ, and DOES 1-10, inclusive, through their acts and omissions,
24  breached each and every one of the aforementioned duties owed to Plaintiffs and
25  decedent WILLIAM KASON.

26  ///

27     174.    These general duties of reasonable care and due care owed to Plaintiffs
28  and decedent WILLIAM KASON by these Defendants include but are not limited to
    the following specific obligations:

48

a. To summon, or transport Decedent to, necessary and appropriate emergency medical care;

b. To refrain from abusing their authority granted them by law; and

c. To refrain from violating Plaintiffs' and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

175. Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, and JUAN GONZALEZ RUIZ, and DOES 1-10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent WILLIAM KASON.

176. Defendants COUNTY, RCSD, CITY, and IPD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

177. As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent WILLIAM KASON sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

### NINTH CAUSE OF ACTION

**Negligence – Medical Malpractice**

**Plaintiff I.R.K. and OFELIA KASON**

**As Against RIVERSIDE COUNTY, and DOES 1-10**

178. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

179. Decedent WILLIAM KASON was under the care and treatment of Defendants DOES 1-10, who were COUNTY medical staff assigned to the COUNTY Jails, including JBDC, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when he suffered a medical

**COMPLAINT FOR DAMAGES**

emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and RCSD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent WILLIAM KASON to specialist medical care providers; negligently failed to provide physician care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee WILLIAM KASON.

180.    Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent WILLIAM KASON emergency medical care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent WILLIAM KASON was provided.

181.    As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

182.    Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

## TENTH CAUSE OF ACTION

### Violation of California Government Code § 845.6

### Plaintiffs I.R.K. and OFELIA KASON

### As Against RIVERSIDE COUNTY, and DOES 1-10

183.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

184.   The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2, 820 and 845.6. Under § 820 of the Government Code, as public employees, the individual defendants are liable for injuries caused by their acts or omissions to the same extent as private persons. Under § 815.2 of the Government Code, Defendants COUNTY are liable for injuries caused by the acts or omissions of its employees, agents, and/or detectives committed within the course and scope of their employment. This claim for relief is not alleging direct liability against Defendants COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

185.   WILLIAM KASON was in need of immediate medical care and treatment and Defendants DOES 1-10, and each of them, failed to take reasonable action to summon immediate medical care and treatment.

186.   Defendants DOES 1-10, inclusive, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and RCSD knowing and/or having reason to know of decedent WILLIAM KASON's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

187.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

188.   As a direct and proximate result of the aforementioned acts of these Defendants, decedent WILLIAM KASON was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

///

///

///

**COMPLAINT FOR DAMAGES**

**ELEVENTH CAUSE OF ACTION**

**Violation of California Civil Code §52.1**

**(Tom Bane Act - Survival Action)**

**Plaintiff Estate of WILLIAM KASON**

**As Against All Defendants Save IPD & RCSD**

189.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

190.   The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820 and Civil Code Section 52.1. Under § 820 of the Government Code, as public employees, the individual defendants are liable for injuries caused by their acts or omissions to the same extent as private persons. Under § 815.2 of the Government Code, Defendants COUNTY are liable for injuries caused by the acts or omissions of its employees, agents, and/or detectives committed within the course and scope of their employment. This claim for relief is not alleging direct liability against Defendants COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

191.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent WILLIAM KASON was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated WILLIAM KASON's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a. The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while being arrested as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b. The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth

Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

c. The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution;

d. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

e. The right to emergency medical care as required by California Government Code §845.6.

192.    Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10's violations of decedent WILLIAM KASON's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[20] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of WILLIAM KASON's rights as described above, Defendants violated WILLIAM KASON's rights by the following conduct constituting threat, intimidation, or coercion:

a. With deliberate indifference to Decedent's serious medical needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

b. Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical needs, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

---

[20] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.*, 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

c.  Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Riverside County jail detainees and inmates;

d.  Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

193.  The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent WILLIAM KASON's rights, or to any legitimate and lawful jail or law enforcement activity.

194.  Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

195.  Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10's violations of decedent WILLIAM KASON's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.1[21] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of WILLIAM KASON's rights as described above, Defendants violated WILLIAM KASON's rights by the following conduct constituting threat, intimidation, or coercion:

a.  With deliberate indifference to Decedent's serious medical needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

---

[21] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

**COMPLAINT FOR DAMAGES**

b.  Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical needs, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

c.  Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

196.  The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent WILLIAM KASON's rights, or to any legitimate and lawful jail or law enforcement activity.

197.  Moreover, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10, through threats, intimidation, and coercion specifically intended to violated WILLIAM KASON's rights when they detained and arrested him. Indeed, given that Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10 failed to summon or provide medical in a clearly medically distressed WILLIAM KASON, Defendants TIMOTHY VROOMAN, FRANCISCO PERIERA, JUAN GONZALEZ RUIZ, and DOES 1-10 intentionally used threats, intimidation, and coercion to violate WILLIAM KASON's Fourth Amendment rights.

198.  Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

199.  Further, each Defendant violated decedent WILLIAM KASON's rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

200.  Defendant COUNTY and CITY are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

**COMPLAINT FOR DAMAGES**

201.  As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent WILLIAM KASON's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A. Wrongful death of WILLIAM KASON, pursuant to Cal. Code of Civ. Proc. § 377.60, *et. seq.*;

B. Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60, *et. seq.*;

C. WILLIAM KASON's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20, *et. seq.*;

D. Violation of WILLIAM KASON's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20, *et. seq.* and federal civil rights law;

E. WILLIAM KASON's loss of life, pursuant to federal civil rights law;

F. WILLIAM KASON's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G. General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H. Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I. Punitive damages as to individual peace officer defendants;

**COMPLAINT FOR DAMAGES**

J.  Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 &
private attorney general doctrine);

K.  A multiplier of damages, including treble damages, and penalties under
the Tom Bane Act;

L.  Interest; and

All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42
U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20, *et seq.*,
377.60, *et seq.*, and 1021.5; California Civil Code §§ 52, *et seq.*, 52.1; and as otherwise
may be allowed by California and/or federal law.

Dated: June 30, 2025            **GASTÉLUM LAW, APC**

By: _____
Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF WILLIAM KASON, et al.

Dated: July 1, 2025             **LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorneys for Plaintiffs,
OFELIA KASON

///
///
///
///
///
///
///

57

**COMPLAINT FOR DAMAGES**

## DEMAND FOR JURY TRIAL

Plaintiffs ESTATE OF WILLIAM KASON, by and through successors in interest, I.R.K. and OFELIA KASON individually hereby make a demand for a jury trial in this action.

Dated: June 30, 2025          **GASTÉLUM LAW, APC**

By: _____

Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF WILLIAM KASON, et al.

Dated: July 1, 2025           **LAW OFFICES OF CHRISTIAN CONTRERAS**
                              **A PROFESSIONAL LAW CORPORATION**

By: _____

Christian Contreras, Esq.
Attorneys for Plaintiffs,
OFELIA KASON

**COMPLAINT FOR DAMAGES**